504 S.E.2d 177

STATE of West Virginia, Petitioner Below, Appellant,

v.

MICHAEL M., II, and Angela H., Respondents Below, Appellees.

STATE of West Virginia, Petitioner Below, Appellant,

v.

BRIANNA H., infant, Travis H., father, and Melissa Y., mother, Respondents Below, Appellees.

STATE of West Virginia, Petitioner Below, Appellant,

v.

TOBIAS W., infant, et al., Respondents Below, Appellees.

Nos. 24879, 24961, 24962.

Supreme Court of Appeals of West Virginia.

Submitted March 24, 1998.

Decided June 22, 1998.

---

Pamela Jean Games–Neely, Christopher C. Quasebarth, Berkeley County Prosecuting Attorney, Martinsburg, for Appellant.

Tracy Weese, Shepherdstown, for Appellee Michael M., II.

David J. Joel, Martinsburg, for Appellee Angela H.

David A. Camilletti, Shepherdstown, for Appellees Tobias W., Joshua W., and Alicia W.

Paul G. Taylor, Henry, Taylor & Janelle, Martinsburg, for Appellee Brianna H.

Keith L. Wheaton, Martinsburg, for Appellee Melissa Y.

Paul E. Lane Martinsburg, for Travis H.

Amanda L. Lewis, Martinsburg, for Appellee Kelly S.

McCUSKEY, Justice:

These are three consolidated child abuse and neglect cases which cause us to decide the important question of whether foster care or an adoptive home is the preferred permanent placement for a child who has been removed from his or her family following a termination of parental rights. In each case, the appellant, West Virginia Department of Health and Human Resources (the "Department"), challenges a disposition order entered by the Circuit Court of Berkeley County. The Department contends that the circuit court abused its discretion by directing that the children involved be placed in permanent foster care, rather than adoptive homes. Also at issue in these cases is the lower court's grant of post-termination visitation rights to the children's parents. While we understand the circuit court's obvious frustration with the delays that too frequently accompany the Department's efforts to execute court orders in matters of this kind, we must, nonetheless, conclude that the circuit court abused its discretion on both points. Accordingly, we reverse, in part, and

remand the cases for further action consistent with this opinion.

## I. Factual and Procedural Background

These appeals challenge final orders of the Circuit Court of Berkeley County in three child abuse and neglect cases. We have consolidated the appeals for purposes of argument and decision. In the three cases, following termination of parental rights, the circuit judge ordered that the children be placed in permanent foster care and granted their parents post-termination visitation rights. In each case, the Department asks this Court to remand to the circuit court with instructions that the final order be modified to permit the Department to secure adoptive parents for the child or children involved. In two cases, the Department also requests that we instruct the circuit court to deny post-termination visitation as not being in the children's best interests. In the third case, while the Department does not contest the grant of such visitation, the guardian *ad litem* assigns the grant as error.

## A. Michael M., II

Angela H. is the natural mother of Michael M., II.[1] Michael M.'s biological father is deceased. On July 2, 1997, at the age of nine months, Michael M. was examined in the emergency room at City Hospital in Martinsburg, West Virginia, having been taken there by Angela H., his maternal grandmother, and his mother's boyfriend, Robbie G. An x-ray of Michael M.'s right leg showed that he had suffered fractures of both his femur and tibia. The explanation given by Angela H. for her baby's fractured bones was medically implausible,[2] and, consequently, the matter was reported to the Department by hospital personnel as a case of suspected child abuse.

After referral to the Department, the case progressed according to the statutory procedure in cases of child abuse or neglect. *See W.Va.Code* § 49–6–1, *et seq.* On July 8, 1997, the Department filed a petition, alleging that Michael M. was an abused and neglected child within the meaning of *W.Va. Code* § 49–1–3 [1994].[3] On that same date, the circuit judge awarded emergency custody of the infant to the Department. A preliminary hearing was held on July 17, 1997. Following the hearing, the circuit court ordered that Michael M. be placed in the temporary physical custody of his paternal aunt and uncle, provided that the Department found their home to be suitable. On July 22, 1997, that placement was achieved. On August 25, 1997, the lower court conducted an adjudicatory hearing. *See W.Va.Code* § 49–6–2 [1996]. In an Adjudication Order, filed on August 29, 1997, the circuit judge concluded that Michael M. was an abused child as defined in *W.Va.Code* § 49–1–3 [1994]; ordered the Department to retain temporary custody of Michael M. and develop a permanency plan within 30 days; and ordered that Michael M.'s visitation with his mother continue, but not in the presence of Robbie G., the putative abuser.

On September 19, 1997, the Department filed a child's case plan for Michael M. *See W.Va.Code* § 49–6–5(a) [1996]. In that document, the Department suggested that Angela H.'s parental rights be terminated and that Michael M. be placed permanently in the home of his paternal aunt and uncle, who were willing to adopt him. The Department also recommended that Angela H. be given visitation rights in the event that her parental rights were terminated.

---

1. We follow our practice in domestic relations cases involving sensitive matters and use initials to identify the parties, rather than full names. *In Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The petition recounts the explanation offered by Angela H. for Michael M.'s injuries, stating:
 7. That upon arrival to the emergency room the mother of the Infant, relayed to staff that the baby had fallen on a hard toy in the playpen.

8. That the mother further relayed that this had happened while her boyfriend was sitting with the Infant.
9. That it was also relayed to the medical staff that the Infant had fallen out of bed.

3. An Amended Petition was filed by the Department on July 17, 1997, in order to correct a typographical error contained in the original petition.

354

A disposition hearing took place on September 29, 1997. *See W.Va.Code* § 49–6–5 [1996]. Subsequently, on October 2, 1997, the circuit court entered a disposition order in which it found that there was no reasonable likelihood that the conditions of abuse could be corrected within a reasonable period of time;[4] terminated Angela H.'s parental rights; and granted Angela H. visitation rights. In addition, the circuit court awarded permanent guardianship of Michael M. to the Department with the direction that he be placed in permanent foster care. In so ordering, the circuit court stated:

> However, it does not follow that Angela [H.] should have no future contact with this child and so the Court is of the opinion that visitation rights ought to be granted within limitation. WVDHHR in its permanency plan suggested adoption within the family as being the desired course of action. However, this Court is dismayed by the administrative delays within WVDHHR vis-a-vis adoptions and believes that permanent foster care is more appropriate especially since contact between the natural mother and the child is to be maintained. In this connection, however, WVDHHR is to understand that when the Court directs it to place a child in permanent foster care, the Court intends that there is to be a placement with a family which is willing to serve in that capacity until the child reaches his majority or is otherwise emancipated and that such a grant of authority does not permit a movement from one foster home to another, which process is deemed by this Court to be injurious to the child.

4. *W.Va.Code* § 49–6–5(a)(6) [1996] specifically requires, as a prerequisite to the termination of parental rights, a finding by the circuit court that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future."

5. Rule 3 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* defines "civil petition" as "the petition instituting child abuse and/or neglect proceedings under W.Va.Code § 49–6–1."

6. The grounds for this conclusion are detailed in the Adjudication Order, where the circuit court stated:

*B. Brianna H.*

Brianna H. is the natural daughter of Travis H. and Melissa Y. On April 14, 1997, six-month-old Brianna H. was admitted to City Hospital in Martinsburg, West Virginia at the direction of Dr. Edward Arnett, a local pediatrician. X-rays taken at the hospital revealed that Brianna H. had sustained multiple fractures of her ribs and right leg.

Brianna H.'s injuries were reported to the Department for investigation, and on April 15, 1997, the Department filed a civil petition against Travis H. and Melissa Y.[5] On the same date, the circuit court awarded the Department temporary custody of Brianna H. On April 24, 1997, a preliminary hearing was held. After the hearing, the circuit judge entered an order continuing the transfer of custody to the Department and directing the Department to permit supervised visitation between Brianna H. and her parents.

An adjudicatory hearing occurred on July 1, 1997. In an Adjudication Order filed July 7, 1997, the circuit judge found that Brianna H. was an abused and/or neglected child;[6] ordered the Department to retain temporary custody of Brianna H. and to continue supervised visitation between Brianna H. and her parents; and required the Department to prepare and submit a "permanency plan"[7] for Brianna H.

On September 30, 1997, the evidentiary portion of a disposition hearing took place. At the hearing, counsel for Travis H. voiced an objection to the child's case plan, which

> The factual basis for said conclusion is that Brianna has suffered numerous serious injuries, rib and leg fractures, on different occasions ... injuries that are more consistent with abuse than accident; injuries concerning which no satisfactory explanation as to cause has been forthcoming. At worst this is a case of intentional abuse either by a parent or a member of the parents' extended family; at best this is a case of failure to provide safe supervision for an infant.

7. As set forth in *W.Va.Code* § 49–6–5(a) [1996], "[t]he term permanency plan refers to that part of the case plan which is designed to achieve a permanent home for the child in the least restrictive setting available."

the Department had submitted to the circuit court prior to the hearing. Counsel for all sides agreed that the plan did not fully comply with Rule 28 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* promulgated by this Court. Consequently, the circuit judge ordered the Department to submit a revised case plan within ten days and further ordered the parties to reconvene on October 17, 1997, to conclude the hearing.

On October 10, 1997, the Department submitted a revised child's case plan, recommending that parental rights be terminated and visitation discontinued. The Department also proposed, in the plan, that Brianna H. be placed for adoption, either with a family member or in one of the adoptive homes that had already been approved by the Department.

On October 17, 1997, the disposition hearing was concluded with oral arguments by counsel. On October 20, 1997, the circuit judge entered a disposition order which departed markedly from the revised child's case plan submitted by the Department. In the order, the circuit judge terminated the parental rights of Travis H. and Melissa Y., as recommended by the Department. However, the circuit court, by its order, also required that Travis H. and Melissa Y. be afforded supervised visitation with Brianna H. Moreover, instead of ordering that Brianna H. be placed in an adoptive home, the circuit court awarded permanent guardianship of Brianna H. to the Department with the direction that she be placed in permanent foster care.[8]

## C. *Tobias W., Joshua W., and Alicia W.*

Kelly S. is the natural mother of three children: Tobias W., born April 1, 1990; Joshua W., born April 2, 1991, and Alicia W., born May 30, 1992. The children's natural father is deceased. On October 3, 1995, the Department submitted a civil petition to the circuit court alleging that Kelly S. had neglected her children.[9] By an order of the same date, the circuit court awarded the Department temporary custody of the children pending a preliminary hearing.[10]

On October 13, 1995, a preliminary hearing was held. By an order filed on November 14, 1995, the circuit court renewed its award of temporary custody to the Department; granted the Department leave to place the children in foster care or with a suitable relative; and ordered that supervised visitation between Kelly S. and the children be conducted. Thereafter, Tobias W., Joshua W., and Alicia W. were placed in separate foster homes in Morgan County.

On March 18, 1996, Kelly S., her counsel, and two representatives of the Department convened for an adjudicatory hearing, at which time counsel for Kelly S. moved for a preadjudicatory improvement period.[11]

---

8. The pertinent parts of the disposition order in *Brianna H.* are substantially the same as the above-quoted language from the disposition order in *Michael M.*

9. The petition alleged, *inter alia:*

 (b) That the workers from R.E.S.A. and Action Youth Care workers have witnessed animal feces in the rooms the children occupy.... (c) That the workers have observed the children being hungry and attempt to eat raw meat. (d) That the workers have observed greasy discarded food on the kitchen floor in a pile. (e) That on the 1st day of October, 1995, infant, Tobias [W.], slipped on the greasy floor and hit his head on the table causing a laceration to his head. (f) That on the 2nd day of October, 1995, the West Virginia Department of Health and Human Resources agent was informed by the mother that she has been allowing a male friend into the home who has communicable tuberculosis. (g) That the mother has diag-

nosed mental disorders which need to be addressed.

10. The petition and temporary custody order were not filed until May 16, 1997. The reason for the delay in filing these documents is not apparent from the record.

11. The record in *Tobias W.* indicates that the guardian *ad litem* failed to attend the March 18, 1996, hearing. The guardian *ad litem* also neglected to file a brief with this Court or to appear before us for oral argument. We find it disconcerting that the children's attorney abdicated his duty to represent them at these critical stages of the proceedings. In Syllabus Point 5 of *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991), we held that "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." In *In re Christina L.,* 194 W.Va. 446, 454, n. 7, 460 S.E.2d 692, 700, n. 7 (1995), we admonished guardians ad

The Department did not object, and by order filed July 31, 1996, the circuit court granted Kelly S. a preadjudicatory improvement period of one year.[12] By the same order, the circuit judge directed the Department to prepare a "family case plan"[13] and ordered Kelly S. to complete a drug and alcohol treatment program before the end of the improvement period. On December 17, 1996, the Department filed a family case plan which outlined a plan for Kelly S.'s recovery from alcoholism and development of parenting skills.

On December 19, 1996, the guardian *ad litem* moved for revocation of the improvement period alleging that Kelly S. had failed to comply with the terms and conditions thereof. At a hearing on February 7, 1997, Kelly S. agreed to revocation of the improvement period and also waived her right to an adjudicatory hearing. By order filed February 28, 1997, the circuit judge found Kelly S. to be guilty of neglect, as defined in *W.Va. Code* § 49–1–3 [1994]; placed her on a six month post-adjudicatory improvement peri-

od; required the Department to prepare a family case plan; and granted the Department permission to keep the children in separate foster homes during the improvement period with the stipulation that visitation among them be maintained.

On April 18, 1997, the Department filed a second family case plan, detailing problems of and goals for Kelly S. and her children, including a plan to reunite the children with their mother. By order filed July 21, 1997, the post-adjudicatory improvement period was extended for three months in order to allow the Department sufficient time to complete the reunification. When the extension was ordered, two of the three children had already been returned to Kelly S.

On October 9, 1997, the guardian *ad litem* filed a Motion for Revocation of Improvement Period due to Kelly S.'s alleged failure to overcome her alcohol and substance abuse problems. At a hearing on the motion on October 20, 1997, testimony concerning Kelly S.'s relapse was presented. On October 22, 1997, a disposition order was filed.[14] In that

*litem* that "it is their responsibility to represent their clients in every stage of the abuse and/or neglect proceedings. This duty includes appearing before this Court to represent the child during oral arguments." The guardian *ad litem* is also responsible for filing an appellate brief on behalf of his or her child ward. We recognized this duty in *In re Katie S.*, 198 W.Va. 79, 91, n. 16, 479 S.E.2d 589, 601, n. 16 (1996), stating: "Part of this representation is to file an appellate brief to insure that their clients' interests are presented." We again underscore that guardians *ad litem* have a duty to fully represent the interests of their child wards at all stages of the abuse and/or neglect proceedings, both in the circuit court and on appeal.

**12.** By an Amended Order For Improvement Period, filed August 19, 1996, the circuit court preserved any objection which the State of West Virginia and guardian *ad litem* had to the improvement period.

**13.** Rule 3 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* defines "family case plan" as "the plan prepared by the Department pursuant to W.Va.Code §§ 49–6–2(b), 49–6D–3 and 49–6–12 following the grant of an improvement period."

**14.** We observe with great concern that more than two years lapsed between the circuit court's initial grant of emergency custody to the Depart-

ment on October 3, 1995, and the filing of a disposition order on October 22, 1997. We find it particularly disturbing that during that period, Tobias W. was moved from one foster home to another because he was exhibiting "disruptive behaviors," and Alicia W. was removed from a foster home "[b]ased upon allegations of neglect," as evidenced by letters from the Department to the circuit judge, dated January 30, 1996, and May 13, 1997. We note that Judge Steptoe's involvement in *Tobias W.* did not begin until approximately February 7, 1997, when he presided at a hearing in the case. In addition, we are cognizant that the various time limits set forth in the *Rules of Procedure for Child Abuse and Neglect Proceedings*, adopted December 5, 1996, effective January 1, 1997, were not in effect until the later stages of *Tobias W.* Nevertheless, given the extensive delays mentioned above, we reemphasize that decisions about the permanent placement of a child should not be delayed unnecessarily.

In Syllabus Point 1 of *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), we recognized that "[u]njustified procedural delays wreak havoc on a child's development, stability and security." In *In re Christina L.*, 194 W.Va. 446, 455, 460 S.E.2d 692, 701 (1995), we criticized delay in considering abandonment by a parent because such delay "leaves the status of the children dangling ... in 'No Man's Land' with regard to any resolution in their lives." *Accord In re Katie S.*, 198 W.Va. 79, 86, 479 S.E.2d 589,

order, the circuit court terminated Kelly S.'s parental rights; awarded permanent guardianship of the children to the Department with the direction that they be placed in permanent foster care; and granted Kelly S. post-termination visitation rights.[15]

## II. Discussion

■ The issues now before this Court concern the circuit court's direction in its disposition orders, following termination of parental rights, that the children be placed in permanent foster care and that their parents be afforded visitation. On appeal, we apply a two-pronged standard of review, as set forth in Syllabus Point 1 of *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996):

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

### A. Permanent Foster Care

Chapter 49 of the *West Virginia Code* is entitled "Child Welfare," and *W.Va.Code* § 49-1-3 [1994] therein defines an "abused child" as a child who is harmed or threatened by "[a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home[.]" In addition, *W.Va.Code* § 49-1-3 [1994] defines a "neglected child" as a child who is harmed or threatened "by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing,

shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]"

Article 6 of Chapter 49 is entitled "Procedure in Cases of Child Neglect or Abuse" and provides various remedies for the protection of children, including, in certain circumstances, the termination of parental rights. Specifically, pursuant to *W.Va.Code* § 49-6-5(a)(6) [1996], a circuit court may

[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent·and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the state department or a licensed child welfare agency.

Additionally, *W.Va.Code* § 49-6-5(a)(6) [1996] provides that if the circuit court makes the finding delineated therein,

then in fixing its dispositional order, the court shall consider the following factors: (1) The child's need for continuity of care and caretakers; (2) the amount of time required for the child to be integrated into a stable and permanent home environment; and (3) other factors as the court considers necessary and proper.

Plainly, *W.Va.Code* § 49-6-5(a)(6) [1996] is silent on the issue of whether foster care or an adoptive home is the preferred permanent out-of-home placement option[16] for an abused or neglected child. However, *W.Va. Code* § 49-6-5(a)(6) [1996] must be considered in light of *W.Va.Code* § 49-1-1(a)

---

596 (1996); *see also In re Jonathan G.*, 198 W.Va. 716, 726, 482 S.E.2d 893, 903 (1996). Once again, we urge circuit judges to resolve abuse and/or neglect proceedings as expeditiously as possible lest those maltreated children who come before the courts be further harmed while within our judicial system.

**15.** The disposition order in *Tobias W.* is, in relevant part, substantially the same as the above-

quoted language from the disposition order in *Michael M.*

**16.** Under Rule 3(j)(3) of the *Rules of Procedure for Child Abuse and Neglect Proceedings*, "[a] permanent out-of-home placement has been achieved only when the child has been placed in a permanent, court-approved, and ratified foster care home as defined by statute, or the child has been adopted or has been emancipated."

[1997], the purpose clause of the child welfare·chapter, which provides generally that

> it is the intention of the Legislature ... when the child has to be removed from his or her family, to secure for the child custody, care and discipline consistent with the child's best interests and other goals herein set out.

In order to effectuate the legislative intent expressed in *W.Va.Code* § 49–1–1(a) [1997], a circuit court must endeavor to secure for a child who has been removed from his or her family a permanent placement with the level of custody, care, commitment, nurturing and discipline that is consistent with the child's best interests. We find that adoption, with its corresponding rights and duties, is the permanent out-of-home placement option which is most "consistent with the child's best interests." [17] *W.Va.Code* § 49–1–1(a) [1997]. Only through adoption can a child who has been removed from his or her parents achieve a legal and economic status "on a par with natural children." *Wheeling Dollar Sav. & Trust Co. v. Hanes,* 160 W.Va. 711, 716, 237 S.E.2d 499, 502 (1977).

■ Accordingly, we hold that where parental rights have been terminated pursuant to *W.Va.Code* § 49–6–5(a)(6) [1996], and it is necessary to remove the abused and/or neglected child from his or her family, an adoptive home is the preferred permanent out-of-home placement of the child. Therefore, we further hold that in determining the appropriate permanent out-of-home placement of a child under *W.Va.Code* § 49–6–5(a)(6) [1996], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

■· As indicated above, the circuit court in these consolidated cases made the requisite finding for termination of parental rights, terminated the parental rights of the abusive and/or neglectful parents, and committed the children to the permanent guardianship of the Department with the direction that they be placed in permanent foster care. Neither the circuit court's termination of parental rights nor its commitment of the children to the permanent guardianship of the Department is now before us. Rather, we decide whether the circuit court abused its discretion by ordering that the children be placed in permanent foster care. In that regard, we observe that there is no evidence in the record which indicates that adoption would not be in each child's best interests. Instead, it appears from the record that the trial court's selection of permanent foster

---

**17.** With regard to the effect of an adoption, *W.Va.Code* § 48–4–11 [1984] provides:

(a) Upon the entry of such order of adoption, any person previously entitled to parental rights, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such person, parent or parents, except any such person or parent who is the husband or wife of the petitioner for adoption, shall be divested of all legal rights, including the right of inheritance from or through the adopted child under the statutes of descent and distribution of this State, and shall be divested of all obligations in respect to the said adopted child, and the said adopted child shall be free from all legal obligations, including obedience and maintenance, in respect to any such person, parent or parents. From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

(b) For the purpose of descent and distribution, from and after the entry of such order of adoption, a legally adopted child shall inherit from and through the parent or parents of such child by adoption and from or through the lineal or collateral kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted child were a natural child of such adopting parent or parents, but such child shall not inherit from any person entitled to parental rights prior to the adoption nor their lineal or collateral kindred, except that a child legally adopted by a husband or wife of a person entitled to parental rights prior to the adoption shall inherit from such person as well as from the adopting parent. If a legally adopted child shall die intestate, all property, including real and personal, of such adopted child shall pass, according to the statutes of descent and distribution of this State, to those persons who would have taken had the decedent been the natural child of the adopting parent or parents.

care, over adoption, was directly related to the court's overt dissatisfaction with the Department.[18] While we sympathize with the circuit court's frustration over any unwarranted delays caused by the Department, we cannot allow innocent children to be arbitrarily deprived of the chance to be adopted, especially when doing so would be contrary to the explicit intent of the Legislature embodied in *W.Va.Code* § 49–1–1(a) [1997]. Thus, under our holding today, this Court concludes that the circuit court committed error in ordering foster care as a permanent placement for the five children without first trying to secure for each of them a suitable adoptive home.

Furthermore, as part of this Court's review of these cases, we entered an order on May 22, 1998, directing the Department "to provide to this Court on or before the 21st day of June, 1998, a complete and detailed report on each child presently within the custody of the Department, or its authorized agent, who has not been placed by the Department in permanent foster care, an adoptive home, or with a natural parent, pursuant to the intent of the Legislature outlined in *W.Va.Code,* 49–1–1, et seq." In addition, we ordered that "the Department shall include within its report to this Court a report on the status of all children legally free for adoption through the West Virginia foster care and adoption system." We further ordered that "[t]he Department's report should also include an explanation of the endeavors undertaken by the Department to rectify" its noncompliance with the law respecting adoption transfers, as set forth in Rule 15420 of the DHHR Social Service Manual.

### B. Post-termination Visitation

 In Syllabus Point 5 of *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court held:

When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Moreover, Rule 15 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* states that

[i]f at any time the court orders a child removed from the custody of his or her parent(s) and placed in the custody of the Department or of some other responsible person, the court may make such provision for reasonable visitation as is consistent with the child's well-being and best interests. The court shall assure that any supervised visitation shall occur in surroundings and in a safe place, dignified, and suitable for visitation, taking into account the child's age and condition. . . . In determining the appropriateness of granting visitation rights to the person seeking visitation, the court shall consider whether or not the granting of visitation would interfere with the child's case plan and the overall effect granting or denying visitation will have on the child's best interest.

 In these cases, the lower court summarily ordered the Department to provide post-termination visitation between the children and their parents without hearing any evidence or argument, or making any findings, regarding whether such visitation would be detrimental to each child's well

---

**18.** Besides stating in its disposition orders that it was "dismayed by the administrative delays within WVDHHR vis-a-vis adoptions," the circuit judge stated as follows at a hearing in *Tobias W.* on October 20, 1997:

And with regard to the disposition of the children, the Court is no longer granting guardianship to the department for purposes of seeking adoption. The department for bureaucratic reasons has what I consider to be an intolerable delay in the placement of children for adoption, so I will grant permanent guardianship to the department with the direction that they place the children in permanent foster care. . . . The Court will not permit the department to go the adoption route unless and until the department shows that it can move those things faster.

being or in each child's best interests.[19] As indicated earlier, the Department does not contest the grant of post-termination visitation in *Michael M.* However, we note that the guardian *ad litem* in *Michael M.* assigns the grant as error in an appellate brief lodged with this Court, and, therefore, we review the issue in that case. In *Brianna H.*, the Department recommended against visitation in the child's case plan and now contests the grant of post-termination visitation on appeal. Thus, we proceed to examine the propriety of the grant in *Brianna H.* as well. Lastly, in *Tobias W.*, although we observe that the Department did not object to post-termination visitation in the court below, and "[a] litigant may not silently acquiesce to error ... and then raise that error as a reason for reversal on appeal," *In Interest of S.C.*, 168 W.Va. 366, 374, 284 S.E.2d 867, 872 (1981), we also find that the guardian *ad litem* failed to file an appellate brief and, further, failed to appear before this Court for oral argument. We conclude that it would be an unjust and rather twisted result for us to refuse to consider the issue in *Tobias W.* simply because the children's guardian completely failed to represent their interests on appeal. Accordingly, we review the circuit court's grant of post-termination visitation in all three cases.

Upon a careful review of the record, this Court finds that no evidence was introduced below on the issues of whether post-termination visitation would be detrimental to each child's well being and whether such visitation would be in his or her best interests. Under *In re Christina L., supra,* and Rule 15 of the *Rules of Procedure for Child Abuse and Neglect Proceedings,* the circuit court should have taken evidence, heard arguments, and made specific findings of fact on these issues. Accordingly, this Court concludes in all three cases that the circuit court committed error in granting post-termination visitation to the children's parents without hearing evidence and making conclusions under the applicable standards. Furthermore, the children will

more than likely be placed for adoption on remand, and their individual needs, wishes and "best interests" may significantly change following their placement in adoptive homes. Thus, post-termination visitation must be considered in that context on remand.

### III. Conclusion

Upon all of the above, the final orders of the Circuit Court of Berkeley County are reversed to the extent that the Department was directed to place the children in permanent foster care, and these cases are remanded to the circuit court for the entry of an order in each case directing the Department to transfer the child or children involved to the adoption unit and to register each child on the Adoption Exchange, pursuant to Rule 15420 of the DHHR Social Service Manual. Additionally, upon remand in each case, the circuit court shall conduct a hearing, pursuant to *In re Christina L., supra,* and Rule 15 of the *Rules of Procedure for Child Abuse and Neglect Proceedings,* to determine whether post-termination visitation between each child and his or her parent(s) is appropriate. In the event that such visitation is found to be not detrimental to the child's well being and in the child's best interests, the Department shall prepare and submit a plan of supervised visitation for the circuit court's review. Furthermore, the circuit court shall revisit the issue of post-termination visitation with respect to each child after adoption.

Reversed, in part, and remanded with directions.

---

**19.** In the disposition order in *Brianna H.,* the circuit court gave virtually no basis for its grant of visitation rights, stating merely that "it does not follow that these parents should have no future contact with this child and so the Court is of the opinion that visitation rights ought to be granted within limitation." The disposition orders in the *Michael M.* and *Tobias W.* cases were also cursory with respect to post-termination visitation.