## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: M.C., A.C., J.C., and B.B.**

**No. 13-0619** (Monongalia County 11-JA-57 through 11-JA-60)

**FILED**

October 21, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Father, by counsel P. Todd Phillips, appeals the Circuit Court of Monongalia County's May 16, 2013 order terminating his parental rights to the children. The guardian ad litem for the children, Amber Sellaro, filed a summary response supporting the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney Lee A. Niezgoda, also filed a summary response in support of the circuit court's order, to which Petitioner Father filed a reply. On appeal, Petitioner Father alleges that the circuit court erred in terminating his parental rights and that the circuit court erred in not considering the best interests of the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Between September 29, 2011, and October 20, 2011, the DHHR received four referrals alleging drug abuse and unsafe living conditions in Petitioner Father's home. Upon investigation, the DHHR discovered that at least two of the children had several unexcused absences from school. In November of 2011, the DHHR filed its petition for abuse and neglect and immediate transfer of custody of the children. The petition alleged that Petitioner Father abused and neglected the children through physical abuse, educational neglect, unsafe living conditions, failing to provide adequate nutrition, and drug abuse. Petitioner Father waived his right to a preliminary hearing and was ordered to cooperate with random drug screens, to make his house available to the DHHR for inspections, and to ensure that the children attended school every day.

In December of 2011, Petitioner Father entered into a stipulated adjudication. Petitioner Father stipulated to: failing to provide adequate nutrition, failing to properly dress the children, truancy, prior referrals of drug abuse, and allowing the children to have unsupervised visits with E.Z. in violation of a previous court order.[1] As part of his stipulated adjudication, Petitioner Father agreed to obtain and maintain suitable housing, to ensure that the children would attend school on a regular basis, and to appropriately address the use of drugs in the home. In February of 2012, the circuit court granted Petitioner Father a six-month post-adjudicatory improvement period, ordering Petitioner Father to attend all treatment meetings and assist in developing a case

---

[1]E.Z. is the biological mother of M.C., A.C., and J.C. However she is not subject to this decision.

plan; comply with all the terms and conditions of the case plan and to follow the recommendations of the team members; participate in random drug screens; obtain and maintain suitable housing; and submit to a psychological/parental fitness evaluation, including a substance abuse assessment. Despite Petitioner Father's non-compliance for failing to submit to random drug screens, the circuit court granted Petitioner Father a three-month extension of his post-adjudicatory improvement period by order entered on July 25, 2012. On November 19, 2012, the circuit court held a dispositional hearing, after which it terminated Petitioner Father's parental rights. It is from this order that Petitioner Father appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner Father raises three assignments of error on appeal. First, Petitioner Father argues that the State failed to prove that termination was in the best interest of his children. Second, Petitioner Father argues that there was insufficient evidence to determine that there was no reasonable likelihood that the conditions of abuse and neglect could not be substantially corrected in the near future, and that it was not in the best interest of the children to terminate his parental rights. Petitioner Father asserts that the order terminating his parental rights fails to discuss what efforts were made to promote reunification, fails to discuss the children's care and placement, fails to consider the wishes of M.C. in violation of West Virginia Code § 49-6-5(a)(6)(C), and that it was plain error for the circuit court to rely on such factors in terminating his parental rights. Last, Petitioner Father argues that the circuit court's formulaic approach was detrimental to the children's best interests and denied them a stable home.

Petitioner Father's three assignments of error are substantially related, and we address them together. Upon our review, the record indicates that the circuit court was presented with sufficient evidence upon which it based findings that there was no reasonable likelihood that conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the child's welfare. West Virginia Code § 49-6-5(b)(3) states that a circumstance in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes situations where

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

As a preliminary matter, this Court finds that Petitioner's specific argument that the circuit court failed to consider M.C.'s testimony concerning the termination of Petitioner Father's parental rights is without merit. West Virginia Code § 49-6-5(a)(6)(C) governing disposition of abused and/or neglected children states in relevant part that "the court shall give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." Based upon a review of the record, it is clear that M.C. was not fourteen years of age at disposition, nor was any evidence presented that he was of an age of discretion.

Petitioner Father acknowledged in his stipulated adjudication that several of the initial case referrals focused on drug abuse in the home and he agreed to appropriately address the use of drugs in his home. Specifically, as part of his six-month post-adjudicatory improvement period he agreed to participate in random drug screens and to attend all treatment team meetings. Petitioner Father failed to comply with the terms of his post-adjudicatory improvement period by failing to submit to random drug screens. During the dispositional hearing, Amber Adkins, a child protective service worker, testified that Petitioner Father failed to fully participate in his post-adjudicatory improvement period. According to Ms. Adkins, the multi-disciplinary team stressed to Petitioner Father the importance that he participate in the random drug screens. Likewise, during Petitioner Father's three-month review hearing, the circuit court strongly urged him to participate with all the requirements of his improvement period and specifically reminded Petitioner Father that the random drug screens were "mandatory". Despite numerous warnings that he needed to fully participate in his improvement period, Petitioner Father only submitted to seven drug screens out of approximately seventy-two scheduled screens.

Further, as a result of Petitioner Father's failure to inform the DHHR of a recent relocation, the DHHR has been unable to establish that Petitioner Father's new home is suitable for the children as required by his improvement plan. Petitioner Father's own testimony confirms that he "should have [taken] more drug tests," and that he was aware of the importance to submit to drug screens. Importantly, when asked about the DHHR's request to terminate his parental rights, Petitioner Father stated, "I mean, in one aspect, they're right. I should've been taking more drug tests." Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. Thus, this Court finds no error in the termination of Petitioner Father's parental rights.

This Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review

3

conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under *W.Va.Code* § 49-6-5(a)(6) [1996], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.,* 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 21, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4