# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: M.G.-1, M.G.-2, M.G.-3, and M.G.-4**

**No. 13-0611** (Kanawha County 11-JA-229 through 11-JA-232)

**FILED**

November 26, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner Mother filed this appeal, by counsel Edward L. Bullman, from the Circuit Court of Kanawha County, which terminated her parental rights to the subject children by order entered on May 13, 2013.[1] The guardian ad litem for the children, Rebecca Stollar Johnson, filed a response in support of the circuit court's order. The Department of Health and Human Resources ("DHHR"), by its attorney Michael L. Jackson, has also filed a response in support of the circuit court's order. Petitioner contends that the circuit court erred in adjudicating neglect based on her economic conditions and in terminating her parental rights when the children were placed with their maternal grandmother.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2011, the DHHR filed its petition alleging abuse and neglect by petitioner and petitioner's boyfriend, T.S. The petition outlined incidents that the children witnessed prior to the filing of the petition. For example, in August of 2011, while petitioner and an intoxicated T.S. were arguing, T.S. pulled out a knife and cut his wrist. After petitioner brought T.S. to the hospital, the hospital staff called the police because T.S. was belligerent and aggressive. In late November of 2011, petitioner brought her children to the DHHR office to report that she and T.S. were homeless. When the DHHR notified petitioner that she and T.S. would be placed in separate homeless shelters, petitioner became upset, picked up a twenty-four-inch television, and threw it on the floor very near the children.

The circuit court granted petitioner and T.S. improvement periods that required both to participate in visitation, parenting classes, and drug screens, and to maintain employment and housing. In January of 2012, petitioner was incarcerated for more than ten days after she and T.S.

---

[1] Because the children in this case have the same initials, we have distinguished each of them using numbers after their initials. The circuit court case numbers also serve to distinguish each child. The oldest child's father lives outside of West Virginia. The three younger children's father is petitioner's boyfriend, T.S.

1

engaged in a physical altercation. In May of 2013, the circuit court terminated the parental rights of petitioner and T.S. after finding that neither parent made efforts to rectify the circumstances that led to the initial petition or successfully followed through with a family case plan. From this termination order, petitioner now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court improperly adjudicated her based upon her economic conditions as opposed to actual neglect. Petitioner asserts that the State's evidence concerning domestic violence and drug use were related to events that occurred months before the children's removal. Petitioner asserts that the children were not abused or neglected pursuant to statutory definitions. She argues that, rather, she and T.S. were poor, underemployed, and homeless.

Upon our review of the record, we find no error or abuse of discretion at adjudication. Pursuant to West Virginia Code § 49-1-3(1)(D), abused children include those whose health or welfare are harmed or threatened by domestic violence. Furthermore, West Virginia § 49-1-3(11)(A) defines neglected children to include those whose health is harmed or threatened by a parent's failure to provide necessary clothing, shelter, or medical care. Our review of the record indicates that the DHHR's petition alleged not only homelessness, but also petitioner's history of domestic violence, her involvement with child protective services in another state, and the father's drug addiction. The circuit court's adjudicatory order reflects that it based its adjudication of petitioner on her long history of domestic violence with her boyfriend and on the incident in which petitioner refused to go to a homeless shelter. The adjudicatory order further recounts that when petitioner was notified that T.S. needed to leave for the men's shelter, she endangered the children by throwing a twenty-four-inch television on the floor near the children. Therefore, contrary to petitioner's argument, the circuit court did not solely base adjudication on petitioner's economic situation and did not erroneously find petitioner as abusive and neglectful.

Petitioner also argues that the circuit court erred in terminating her parental rights rather than granting her an improvement period or dismissing the case because her children were placed with their maternal grandmother. Petitioner asserts that under this placement, she could have petitioned for further parenting time had her rights not been terminated. Petitioner contends that the circuit court should not have terminated parental rights when a less restrictive alternative under West Virginia Code § 49-6-5(a)(5)(iii) or (iv) was available with the children's grandmother.

Upon our review, we find no error with the circuit court's decision to terminate petitioner's parental rights. "'Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013). An excerpt of the dispositional hearing transcript provides that petitioner did not complete domestic violence counseling and did not always attend her supervised visitation with the children. The record and the circuit court's findings support its conclusions that there was no reasonable likelihood to believe that conditions of abuse and neglect could be substantially corrected in the near future, and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

This Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under *W.Va.Code* § 49-6-5(a)(6) [1996], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that

3

adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.,* 202 W.Va. 350, 504 S.E.2d 177 (1998).  Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home."  Syl. Pt. 5, *James M. v. Maynard,*185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  November 26, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II