# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.B., L.B., and K.B.-1**

**No. 23-395** (Kanawha County 22-JA-337, 22-JA-338, and 22-JA-339)

## MEMORANDUM DECISION

Petitioner Father K.B.-2[1] appeals the Circuit Court of Kanawha County's May 30, 2023, order terminating his parental rights to M.B., L.B., and K.B.-1.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2022, the DHHR filed a petition alleging that petitioner had a history of Child Protective Services ("CPS") involvement. Specifically, the DHHR alleged that he assaulted M.B.'s mother and one of her other children[3] on February 8, 2020, at which time the child he assaulted was fifteen months old. According to the DHHR, petitioner "had thrown [the] 15-month-old [child] across the room during a domestic dispute." As a result of the incident, petitioner pled guilty to felony strangulation and two misdemeanor counts of battery. The DHHR further alleged that petitioner had a history of domestic violence cases in Kanawha County in which he was a respondent. Based on this extensive history of domestic violence, the DHHR alleged that petitioner was incapable of appropriately caring for his three biological children, M.B., L.B., and K.B.-1.[4]

---

[1]Petitioner appears by counsel Benjamin Freeman. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katherine A. Campbell. Counsel Sharon K. Childers appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because one child and petitioner share the same initials, we refer to them as K.B.-1 and K.B.-2, respectively.

[3]The child petitioner assaulted is not at issue in this appeal and was, instead, the subject of a prior abuse and neglect proceeding.

[4]The DHHR later amended the petition to include an additional child, who is not at issue in this appeal, and that child's unknown father.

In September 2022, the court held a preliminary hearing. Petitioner failed to appear but was represented by counsel. During the hearing, a CPS investigator testified to a meeting with petitioner. According to this witness, petitioner "was combative [and] uncooperative."

In February 2023, the court held an adjudicatory hearing. At that time, the DHHR indicated that petitioner, who did not appear for the hearing but was represented by counsel, was incarcerated. Based on the evidence, the court found that petitioner had an "extensive and chronic history of domestic violence," including an incident in which he physically abused a child and three domestic violence proceedings in which petitioner was a respondent. The court further concluded that this history "render[ed] him an unfit caregiver" and that he was an abusing and neglecting parent to M.B., L.B., and K.B.-1.

In May 2023, the court held a dispositional hearing. Petitioner, who remained incarcerated, appeared by video and was represented by counsel. The DHHR presented testimony from a CPS worker, who recommended termination of petitioner's parental rights based on his extensive history of violence and past child endangerment. Petitioner declined to testify. Ultimately, the court found that petitioner failed to participate in the proceedings until the final dispositional hearing, despite notice of all past hearings. The court also found that petitioner "has demonstrated no likelihood of participating in remedial services if the same were offered on the basis of his lack of participation in these proceedings, and lack of acknowledgement of any parenting deficiencies." Further, the court concluded that the DHHR could not make reasonable efforts to afford petitioner remedial services "by virtue of his failure to participate in these proceedings even when he was not incarcerated." Finally, the court found that termination of petitioner's parental rights was in the children's best interests and necessary to establish permanency for them. Accordingly, the court terminated petitioner's parental rights to the children.[5] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner argues that the court erred in terminating his parental rights because he alleges that he could have corrected the conditions of abuse and neglect. In advancing this position, however, petitioner relies on arguments that have no basis in the record. For example, petitioner appears to assert that, because the mother of M.B. is deceased, his history of domestic violence has somehow been remedied. Further, he argues that the past instances of domestic violence upon which the circuit court relied were remote and, therefore, irrelevant to disposition.[6] These arguments are simply unavailing, as

---

[5]M.B.'s mother is deceased, and the permanency plan for that child is adoption in the current placement. The permanency plan for L.B. and K.B.-1 is to remain with their nonabusing mother.

[6]In support of his assignment of error concerning termination of his parental rights, petitioner asserts, in passing, that "the DHHR did not prove by clear and convincing evidence that domestic violence occurred at or near the time of the filing of the petitions which caused his children to be abused and neglected." It appears that petitioner may be attempting to call into question his adjudication under West Virginia Code § 49-4-601. However, petitioner failed to set

petitioner's history of extreme domestic violence and physical abuse of a child speaks directly to the conditions of abuse and neglect at issue, and the death of one of his prior victims is insufficient to establish that these conditions have been remedied.

Petitioner also "believes that he was not given an opportunity to remedy these parenting deficiencies due to his incarceration," but ignores the fact that the court explicitly found that he failed to take the meager step of even appearing for hearings at times he was not incarcerated and that his failure to participate in the proceedings precluded the offering of remedial services. As the record shows, petitioner's incarceration had no bearing on his ability to demonstrate a likelihood of complying with services or the circuit court's ultimate determination that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Instead, as the circuit court explained, it based this finding on petitioner's almost total lack of participation in the proceedings and his refusal to acknowledge any parenting deficiencies. As we have explained, "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Accordingly, petitioner is entitled to no relief in this regard.

Ultimately, we find no error in the circuit court's termination of petitioner's parental rights. Contrary to his arguments on appeal, the circuit court had ample evidence upon which to base the findings necessary for termination. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare). Further, petitioner's argument that the court failed to impose the least restrictive dispositional alternative is without merit, as he simply cites to the various alternatives set forth in West Virginia Code § 49-4-604(c) but fails to explain why termination was not appropriate, other than to baldly assert that it "was not warranted." As set forth above, the court found, based on petitioner's almost total failure to participate, that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect. This is in keeping with West Virginia Code § 49-4-604(d)(2), which provides that such circumstances exist when a parent has "willfully refused or [is] presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control." Further, we have explained that termination of parental rights "without the use of intervening less restrictive alternatives" is appropriate upon this finding. Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Finally, petitioner's assertion that the court could have permitted the children to be placed in legal guardianships ignores this Court's stated preference for adoption. *See* Syl. Pt. 2, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998).

---

forth an assignment of error challenging his adjudication or otherwise present an argument to this effect. Accordingly, we refuse to address any attempt to call petitioner's adjudication into question. *See State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) (citations omitted) ("Although we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but . . . not supported with pertinent authority, are not considered on appeal.").

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 30, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: October 25, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4