No. 24-176 – *In re M.B.*

BUNN, Justice, concurring:

**FILED**
**November 13, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I agree that the circuit court committed no error in its ruling on the limited issue before it: whether M.B.'s current foster placement serves his best interests. The circuit court found that M.B. should remain in his foster placement, which provides him with a "stable loving home," reunited with his siblings, and where all parties agree he is content, healthy, and loved. Although the guardian ad litem ("GAL") insists that aspects of the foster family's Amish lifestyle threaten to implicate portions of the Foster Care Bill of Rights ("FCBR") in the future, she offered no evidence that any of those rights are being curtailed. The circuit court correctly rejected the speculation necessary to reach most of the GAL's arguments, properly focusing instead on the undisputed benefit to M.B.'s health and well-being his current placement affords—a holistic evaluation well within its discretion. "Questions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977).

I write separately to underscore the narrow issue before the circuit court, the limited application of the authority advanced by the GAL, and the scope of my concurrence in the plurality opinion. M.B. is presently in the legal custody of the Department of Human Services and placed with a non-relative foster family. As a foster child, M.B. is entitled to

1

the benefits of the FCBR and, despite the GAL's forecasted concerns, he is being deprived of nothing the FCBR affords him. M.B. is current on vaccinations, well-child care, and obtained necessary surgical and specialty care; he has been denied none of the "medical, dental, and vision care[] . . . as needed" required by subsection (a)(4) of the FCBR. W. Va. Code § 49-2-126(a)(4). M.B.'s right to a "safe and healthy environment[]" guaranteed by subsection (a)(1) is fully intact as M.B. and his sisters' immersion into the Amish community has been successful, with assurances that the foster family would relocate in the event of any change in the community's acceptance. § 49-2-126(a)(1). By being placed with his siblings, M.B.'s right to "have and maintain contact with siblings as may be reasonably accommodated[]" under subsection (a)(9) is fulfilled. § 49-2-126(a)(9). And while the GAL makes much of M.B.'s right to "attend school" as referenced in subsection (a)(13), that provision is not yet applicable as he is not of school age. § 49-2-126(a)(13).

The GAL's motion to remove M.B. from his foster family uses the rights enumerated under the FCBR to advance anticipatory concerns about M.B.'s post-adoptive upbringing. However, the FCBR outlines the rights of foster children *while they are in foster care*; any attempt to apply it beyond those bounds has no statutory basis. The Court has described our child welfare system as ensuring that "'appropriate care is given and maintained' for children who become *participating members of this system*." *In re G.G.*, 249 W. Va. 496, 503, 896 S.E.2d 662, 669 (2023) (emphasis added). The FCBR has no applicability to children who are no longer participating in that system, such as post-adoptive children. In fact, the GAL's brief acknowledges that the authority upon which she

relies pertains to a "child in state custody," yet she seeks to extend those statutory and policy mandates to unrealized scenarios involving post-adoptive children and the decisions of their parents. The appropriateness of a foster child's placement is not measured by perceived "opportunities" lost under a parent-child relationship that does not yet exist, but by the more finite and objective criteria of whether the placement provides the "custody, care, commitment, nurturing and discipline consistent with the child's best interests[.]" Syl. Pt. 3, in part, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998).

Armed with little more than a list of ways the Amish lifestyle diverges from the mainstream, the GAL presented the circuit court with no evidence that M.B. is or will be deprived of the nurturing and care to which he is entitled as a foster child. Without more, the circuit court was charged with determining whether these projected concerns warranted removing a young child from the only family he has ever known. The Court has recognized that "significant bonds are formed between a child and his or her caregivers at this young age, and, critically, any disruption of those bonds has the potential to severely impact the child's growth and development." *In re G.G.*, 249 W. Va. at 504, 896 S.E.2d at 670. Therefore, "stable relationships should be preserved whenever feasible." *State ex rel. Treadway v. McCoy*, 189 W. Va. 210, 213, 429 S.E.2d 492, 495 (1993). More specifically, "this Court has consistently and repeatedly found that it is in a child's best interests to remain in a foster home when there is evidence of a significant bond between the child and the foster parents[.]" *In re M.M.*, 251 W. Va. 74, 909 S.E.2d 109, 126 (2024) (Armstead, C.J., dissenting). In view of these considerations, there is no abuse of discretion in a ruling

3

that advances M.B.'s continuation in a stable placement where he is thriving in his foster family's impeccable care. To the extent that the plurality opinion can be read as addressing issues or arguments not captured in the foregoing discussion, my concurrence is limited to the facts and considerations I have outlined.