# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **D.M., W.P., and M.P.**

**No. 17-0567** (Gilmer County 16-JA-31, 16-JA-32, & 16-JA-33)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.P., by counsel Timothy V. Gentilozzi, appeals the Circuit Court of Gilmer County's May 22, 2017, order terminating her parental rights to D.M., W.P., and M.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Shelly DeMarino, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she had no knowledge of or control over the situation that led to the filing of the petition and without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2016, the DHHR filed an abuse and neglect petition against petitioner and her boyfriend, C.P. According to the petition, petitioner and C.P. did not have any children together, but each had children from prior relationships, all of whom resided permanently in the home or visited the home on a regular basis. The DHHR alleged that petitioner failed to adequately supervise the children, which resulted in a child's death. Specifically, two of C.P.'s sons went next door to their grandfather's house where one child picked up a loaded rifle and accidently shot the other child. Both petitioner and C.P. were charged criminally with gross neglect of a child creating a substantial risk of death or serious bodily injury and child neglect

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

resulting in death. The DHHR filed an amended petition in December of 2016, alleging that C.P.'s three children had histories of mental illnesses and extreme behavior difficulties and that petitioner had knowledge of these issues while her children were residing with C.P.'s children in the home. The DHHR further alleged that the home was filthy, cluttered, and unsafe at the time the children were staying there.

An adjudicatory hearing was held on three dates throughout January and February of 2017. The circuit court heard evidence that petitioner knew of the extreme and dangerous behaviors of C.P.'s children and yet failed to properly supervise them while her biological children were in her care. Further, evidence was presented that the home was unsafe, as the children had access to exposed wiring and the children's medication was not properly administered. Ultimately, the circuit court adjudicated petitioner as an abusing parent and set the dispositional hearing.[2]

In April of 2017, petitioner underwent a psychological evaluation. According to the evaluating psychologist, throughout the evaluation, petitioner continued to deny abusing or neglecting the children. Further, petitioner minimized her drug use and believed she was capable of good parenting while under the influence. Petitioner stated "I used meth to stay up. I felt like I was a better parent on it." At no point throughout the evaluation did petitioner express any insight or remorse as to how her actions negatively affected the children. The evaluator concluded that petitioner's testing results indicated that she was of average intelligence and, as such, her parenting deficits could not be attributed to lack of cognitive ability. The evaluator noted that while petitioner indicated during the evaluation that she desired to maintain sobriety, her underlying personality issues such as irresponsibility, impulsivity, affective instability, anger, and unstable interpersonal relationships would remain and create a high risk for relapse. Finally, the evaluator noted that because petitioner failed to accept responsibility for her actions, attempting to correct her issues would be an exercise in futility. As such, the evaluator concluded there was no reasonable likelihood that petitioner could correct her issues in the near future.

Later in April of 2017, the circuit court held a dispositional hearing. The circuit court heard the testimony of several witnesses, including the evaluating psychologist, petitioner, and C.P. Thereafter, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated her parental rights.[3] It is from the May 22, 2017, dispositional order that petitioner appeals.

---

[2]While the parties refer to petitioner as "an abusive and neglectful parent," we note that the phrase "neglectful parent" does not appear in the statutory framework for abuse and neglect proceedings in this State. Instead, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, the Court will refer to petitioner as an "abusing parent" in this memorandum decision, as that phrase encompasses parents who have been adjudicated of abuse and/or neglect.

[3]In addition to the termination of petitioner's parental rights, W.P.'s father voluntarily relinquished his parental rights. The father of D.M. and M.P. is currently completing an

(continued . . . )

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

As an initial matter, we note that in her brief before this Court, petitioner failed to include a table of authorities, to include a standard of review, to cite to a single case in support of her argument, and to cite to the appendix record. These failures are in direct contradiction of this Court's Rules of Appellate Procedure and specific directions issued by administrative order.

Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact *and law* presented, *the standard of review applicable, and citing the authorities relied on . . .* [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(emphasis added). Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal

---

improvement period, as an amended petition was filed against him after he allowed the children to have contact with petitioner. According to the DHHR, the permanency plan is for D.M. and M.P. to be reunited with their father and for their father to adopt W.P. after the successful completion of his improvement period. The concurrent permanency plan is adoption of the children by an aunt.

3

. . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief contains no citations to either applicable law or the record on appeal. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W.Va. 537, 555, 711 S.E.2d 607, 625 (2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Rule 10(j) of the West Virginia Rules of Appellate Procedure further states that "[t]he failure to file a brief in accordance with this rule may result in the Supreme Court refusing to consider the case[.]" Petitioner's entire brief is woefully inadequate, as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure. Accordingly, this Court will not address petitioner's assignments of error on appeal.

Secondly, because the circuit court's proceedings regarding D.M. and M.P.'s father are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*In re Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has held that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 22, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker