## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **D.S.**

**No. 17-0499** (Preston County 16-JA-60)

**FILED**

**December 1, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.S., by counsel Jeremy B. Cooper, and the guardian ad litem ("guardian") for the child, D.S., Cheryl Warman, appeal the Circuit Court of Preston County's May 24, 2017, order dismissing Respondent Father, W.S., from the abuse and neglect proceedings below.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of petitioners. Respondent father, by counsel Natalie J. Sal, filed a response in support of the circuit court's order. Petitioners filed a reply. On appeal, petitioners argue that the circuit court erred in failing to adjudicate Respondent Father as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2016, the DHHR filed an abuse and neglect petition against Petitioner Mother and Respondent Father alleging that Petitioner Mother was involved in a motor vehicle accident wherein the Petitioner Mother was a passenger, the child was not properly restrained in the vehicle, and the driver of the vehicle was impaired due to the consumption of illegal drugs. The petition further alleged that Petitioner Mother's drug use impaired her ability to properly care for the child. With regard to Respondent Father, the petition alleged that he had a long history of drug abuse and criminal behavior which resulted in his incarceration, that he had no residence, that he did not maintain regular contact with the child, and that he previously attempted suicide. The petition also alleged that the aforementioned circumstances were emotionally and psychologically harmful to the child.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In August of 2016, the circuit court held a preliminary hearing wherein the court found that placing the child in the care of either parent "would be contrary to her welfare and best interests." After the preliminary hearing, Respondent Father filed a motion for a pre-adjudicatory improvement period. In Respondent Father's motion, he acknowledged that he needed to obtain and maintain an appropriate home and undergo a psychological evaluation to verify his stable mental health. Respondent Father also indicated that he would submit to random drug screening and would comply with any other recommendations of the DHHR. The circuit court granted Respondent Father's motion for a pre-adjudicatory improvement period.

In November of 2016, the circuit court held a review hearing wherein the DHHR reported that Respondent Father failed to comply with the terms of his improvement period. According to the DHHR, Respondent Father failed to maintain contact with the DHHR or to provide it with an address, phone number, or any other means of contacting him. Additionally, Respondent Father indicated that he had been "struggling with homelessness," but voiced a desire to participate in services.

In January of 2016, the circuit court held an adjudicatory hearing regarding Respondent Father. A community corrections worker was called to testify about his participation in drug screening during his improvement period. Respondent Father's counsel objected to the testimony upon the ground that it was not relevant to the issue of adjudication because the drug screening was not conducted pursuant to conditions existing at the time of the filing of the petition. The circuit court sustained the objection and the DHHR moved for leave to continue the hearing and amend the petition to include allegations which arose subsequent to the original petition's filing. The circuit court granted the DHHR's motion and rescheduled the hearing.

In February of 2017, the DHHR filed an amended abuse and neglect petition alleging that Respondent Father lacked stable and appropriate housing throughout his pre-adjudicatory improvement period and failed to exercise visitation with the child, despite the opportunities afforded to him. In addition, the amended petition alleged that, notwithstanding his previous assertions that he would comply with any terms and conditions imposed by the improvement period, Respondent Father failed to fully comply with the same.

Later in February of 2017, the circuit court held a second adjudicatory hearing. The circuit court found that the DHHR proved by clear and convincing evidence that Respondent Father had "infrequent contact" with the child and failed to provide the child with stable and appropriate housing, as alleged in the original petition, but that such evidence was insufficient to constitute abuse and neglect. Accordingly, by order entered on May 24, 2017, the circuit court dismissed the abuse and neglect petitions against Respondent Father but again found that returning the child to Respondent Father's custody would be contrary to her welfare. Therefore, the circuit court ordered that the child remain in the DHHR's custody with her placement in the

home of Petitioner Mother's cousin.[2] It is from that order that Petitioner Mother and the guardian appeal.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we turn to the parties' arguments.

On appeal, petitioners argue that the circuit court erred in failing to adjudicate Respondent Father as an abusing parent. We do not agree. West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." West Virginia Code § 49-1-201 defines an "abused child[,]" in part, as

a child whose health or welfare is being harmed or threatened by . . . [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home.

Similarly, West Virginia Code § 49-1-201 defines a "neglected child" as a child

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

---

[2]The parental rights of Petitioner Mother were terminated below. The Respondent Father, W.S., was dismissed from the proceedings below. According to the guardian, the child remains in the custody of Petitioner Mother's cousin and the permanency plan for the child is to remain in that home.

In this case, the circuit court was presented with testimony at the adjudicatory hearing that Respondent Father had contact with the child through the petitioner mother and that Respondent Father had a good relationship with the child. At the time of the adjudicatory hearing, Respondent Father testified that he contacted the DHHR to set up visitation with the child and that he completed an application to receive a free cellular telephone. He also testified that, because he had to change residences prior to the cellular telephone's shipment, he never received the cellular telephone and the DHHR was unable to arrange visitation. The circuit court was also presented with evidence that all of Respondent Father's random drug screens were negative for illegal or illicit substances and that he was incarcerated only two times: once for eight hours and once for twenty-four hours. Due to the evidence presented, the allegations in the petitions regarding Respondent Father's drug use and frequent incarceration could not be substantiated. Based on the evidence presented below, the circuit court did not adjudicate the Respondent Father as an abusing parent and dismissed the abuse and neglect petition against him.

Further, the amended petition only alleged that respondent further failed to complete the terms of his pre-adjudicatory improvement period, not that he further abused or neglected the child, as those terms are defined by West Virginia Code § 49-1-201. Accordingly, the circuit court determined that the allegations contained in the amended petition were not relevant to the issue of adjudication because the same were not based upon conditions existing at the time of the filing of the petition, as required by West Virginia Code § 49-4-601(i). As such, we find that the circuit court was presented with insufficient evidence to find that Respondent Father either abused or neglected the child and, as a result, did not err in declining to adjudicate him as an abusing parent.

Additionally, because the child is still in the custody of the DHHR, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> "[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record."

4

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, syl. pt. 6 (2011). Moreover, this Court has stated that

> "[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found."

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

Accordingly, for the foregoing reasons, we find no error in the decision of the circuit court, and its May 24, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: December 1, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker