# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.L., K.C., and N.C.**

**No. 17-0830** (Mason County 16-JA-17, 18, and 19)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.M., by counsel R. Michael Shaw, Jr., appeals the Circuit Court of Mason County's August 2, 2017, order terminating her parental rights to J.L., K.C., and N.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael N. Eachus, filed a response on behalf of the children in support of the circuit court's order. S.C., the father of K.C. and N.C., by counsel Tanya Hunt Handley, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her post-adjudicatory improvement period and terminating her parental rights based upon erroneous findings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2016, the DHHR filed an abuse and neglect petition alleging petitioner was unable to control her angry, violent, and explosive behavior; was an inappropriate caregiver inasmuch as she was unwilling or unable to provide a safe and stable home for the children or provide for their basic needs; and, since the initiation of a Child Protective Services ("CPS") case seven months prior, failed to make any improvement to provide a safe home for her children. CPS opened a case due to domestic violence in petitioner's home. Petitioner was homeless twice during the CPS case. In June of 2016, petitioner obtained a home, but was unable to get the electricity turned on due to a $2,000 past overdue balance with the electric company. Petitioner ultimately moved in with her stepmother. The petition further alleged that petitioner failed to keep food, medicine, clothing, personal hygiene items, and other essential items in the home because she gave them away or lost them. The petition also alleges that petitioner failed to make

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

a necessary dental appointment for J.C. and that during a home visit at petitioner's home, a CPS worker witnessed J.C. to be very ill. J.C. vomited, while petitioner took no action to comfort or clean the child. When the CPS worker returned to petitioner's home to check on the child and inquire about a medical card, petitioner became very angry and yelled at the CPS worker, threatened her, and threw a bottle at her head.

In September of 2016, the circuit court held an adjudicatory hearing at which petitioner stipulated to the allegations of abuse and neglect set forth in the petition. Petitioner moved for a post-adjudicatory improvement period, which the circuit court granted. The terms of the improvement period included learning better coping skills to avoid hostile interactions, understanding the effects of her actions on her children, demonstrating the skills and knowledge to appropriately parent her children, coping with stress in appropriate ways. Petitioner was also directed to submit to full psychological/parental fitness assessment, including IQ testing.

In November of 2016, petitioner's psychological evaluation was conducted. The doctor reported that petitioner's IQ scores suggested mild mental retardation; her mental capacity may cause petitioner to experience difficulty in living independently and acting as the sole caregiver to children; and that she exhibited symptoms of bipolar disorder. The doctor opined that petitioner lacked insight into her problems and that petitioner was unlikely to attain minimally adequate parenting skills, even with services. In a report to the circuit court, the DHHR noted that petitioner struggled to remain calm and in control of her children during visits, that she relied heavily on DHHR workers to deal with the children, and spent most of the visit on her phone taking pictures of herself. Thereafter, the service provider decided that petitioner was only allowed to have her phone out for a few minutes at the end of the visits.

In March of 2017, the DHHR filed a report with the circuit court indicating that petitioner was not making necessary changes to ensure the children's safety. One service provider reported that petitioner made little to no progress in adult life skills or individualized parenting services. Another service provider reported that petitioner seemed inattentive and disinterested during parenting sessions. In April of 2017, the DHHR filed a motion to terminate petitioner's post-adjudicatory improvement period due to her failure to make necessary progress. In its motion, the DHHR argued that petitioner's psychological assessment results were detrimental to her parental fitness because her IQ was very low, her cognitive abilities ranked in the dementia range, and she was unlikely to have the ability to care for herself, let alone the children. The DHHR further argued that petitioner failed to make adequate progress during her improvement period.

In May of 2017, the guardian filed his report and recommended that the circuit court terminate petitioner's post-adjudicatory improvement period for failure to comply with its terms and conditions. The circuit court held a review hearing wherein a service provider testified that during visits, petitioner would seem distracted and failed to recognize safety concerns such as her children playing on playground equipment, leaving the playground area unsupervised, and attempting to bite the service provider. Additionally, the service provider testified that petitioner acted out inappropriately, cried, cursed, and acted angrily towards K.C. and N.C.'s father's girlfriend before one particular visit. In June of 2017, the circuit court held a hearing on the DHHR's motion to terminate petitioner's post-adjudicatory improvement period. The circuit

2

court found that petitioner failed to make adequate progress and failed to satisfy the terms and conditions to correct the behaviors alleged in the petition. The circuit court terminated petitioner's post-adjudicatory improvement period.

In July of 2017, the circuit court held a dispositional hearing, wherein petitioner testified that she lived with her stepmother and that if the children were returned to her, they could also live with her stepmother, and that her stepmother and stepsisters would help her take care of the children. A service provider testified that both J.L. and petitioner seemed disinterested in interacting with each other during visits. Based upon the evidence provided at the dispositional hearing, as well as prior hearings, the circuit court found that petitioner could not safely parent her children, that petitioner was unable to provide adequately for the needs of the children, that petitioner failed to comply with the case plan, that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, and that termination of petitioner's parental rights was in the best interests of the children. Ultimately, the circuit court terminated petitioner's parental rights in its August 2, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in finding that she did not successfully complete her post-adjudicatory improvement period because she spent time with her children, appropriately disciplined them, brought them snacks and drinks, and properly parented them. Petitioner also argues that she has appropriate housing with her stepmother. As such, she argues that terminating her improvement period was improper. We do not agree.

---

[2]In addition to the termination of petitioner's parental rights, A.D., the father of J.L., is still involved in abuse and neglect proceedings. According to the guardian and the DHHR, J.L. is placed in a foster home with a permanency plan of adoption in that home. S.C., the father of K.C. and N.C. is a non-abusing parent and has full custody of his children.

West Virginia Code § 49-4-610(7) provides that "[u]pon the motion by any party, the court shall terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period[.]" Here, petitioner's assertions on appeal are in direct contradiction of the evidence established by the DHHR's reports and testimony. The service providers and the DHHR reported that although petitioner did initially interact with the children, she seemed distracted and disinterested during visits. In fact, she was so concerned with being on her cellphone during visits, the service provider only allowed her to use it during the last few minutes of the subsequent visits. Further, petitioner left much of the children's care up to the service provider, often did not bring snacks to visits, and failed to recognize when the children's safety was at issue. According to the evidence, petitioner also made little to no progress in adult life skills or individualized parenting services. The DHHR established that petitioner failed to make adequate progress during her post-adjudicatory improvement period. Therefore, the circuit court did not err in terminating petitioner's post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in terminating her parental rights based upon erroneous findings. She argues that the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future was not supported by the record and its finding that she was not able to safely parent the children was in error. We disagree.

West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, although she participated in her post-adjudicatory improvement period by being physically present at all visits, petitioner did not benefit from services. She failed to learn how to safely and effectively parent her children and continued to have issues with handling her anger. Additionally, petitioner seemed inattentive and disinterested and failed to recognize when her children were in potentially dangerous situations during visits. She also did not see a problem with one of the children attempting to bite a service provider. The psychological report provided that petitioner was unlikely to have the ability to care for children. Based on the evidence provided, the circuit court found that "[petitioner] is not able to safely parent the children."

Petitioner also argues that she secured housing by moving in with her stepmother. Petitioner has a history of homelessness and was unable to provide a home with electricity because of her nearly $2,000 overdue balance with the electric company. Further, there is no evidence in the record her stepmother's home is an appropriate home in which to have her children. Petitioner asserts on appeal that if her children were returned to her, she would "likely be more successful in obtaining housing." However, petitioner does not explain how she would be more successful in obtaining housing. The circuit court ultimately found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was in the best interests of the children. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings

4

that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Therefore, we find no error in the termination of petitioner's parental rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 2, 2017, order is hereby affirmed.

                                                                                    Affirmed.

**ISSUED**: February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker