## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.D., G.N.-1, and G.N.-2**

**No. 18-0061** (Taylor County 17-JA-72, 73, and 74)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Maternal Grandmother S.C., by counsel Kevin T. Tipton, appeals the Circuit Court of Taylor County's December 15, 2017, order denying her motion to intervene and refusing to grant her placement of D.D., G.N.-1, and G.N.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Terri L. Tichenor, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her motion to intervene and the opportunity to adopt her grandchildren.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 30, 2017, the DHHR filed an abuse and neglect petition in Marion County related to an incident in which the father of G.N.-1 and G.N.-2 was shot and killed in a vehicle with the mother and children present. On June 25, 2017, Child Protective Services ("CPS") located the children at petitioner's home. On June 26, 2017, the Marion County Child Advocacy Center conducted a forensic interview with a child not at issue in this appeal who witnessed the shooting. During the interview, the child disclosed that a third party shot the father in the back while he was in the vehicle with the children. The child further indicated that the mother and the shooter attempted to clean blood out of the vehicle, and that during that time, the mother was speaking on the phone with petitioner. Lastly, the child disclosed that he and the other children had blood spatter on their clothing from the shooting. According to the DHHR, following the shooting death of the father, petitioner concealed the children and allowed the mother and the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children have the same initials, they will be referred to as G.N.-1 and G.N.-2, respectively.

1

shooter into her home. The DHHR also reported concerns that petitioner would allow the mother to see the children.

According to the guardian, petitioner was the subject of a home study for possible placement of the children and the home study was approved "with concerns." The home study reported concerns regarding the cleanliness of the home as well as potential sleeping arrangements for the children. Additionally, the home study noted concerns regarding petitioner's health and the number of medications she took on a daily basis. Further, the home study reported concerns surrounding petitioner's ability to help the children cope with the trauma of witnessing their father being shot and killed. According to the DHHR, petitioner reported that the children "were fine" and also stated that she thought they were doing okay because "their father was pretty mean to them anyway." Lastly, the DHHR was concerned by petitioner's lack of a stable income. According to the guardian, the multidisciplinary team ("MDT") team determined placement with petitioner was not in the children's best interests.

In October of 2017, the matter was transferred to Taylor County. According to the guardian, the children were placed together in a foster home. On November 9, 2017, the circuit court held a preliminary hearing wherein the mother moved to voluntarily relinquish her parental rights to the children, which the circuit court accepted. Thereafter, on November 20, 2017, petitioner filed a motion to intervene and requested placement of the children, which was denied. Her request for placement was referred back to the MDT, who again conferred and determined that placement with petitioner was not in the children's best interests. Petitioner appeals the circuit court's December 15, 2017, order denying her motion to intervene.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

---

[2]The mother voluntarily relinquished her parental rights to the children. D.D.'s father's abuse and neglect proceedings are ongoing. According to the respondents, the children are placed in a foster home with a permanency plan of adoption.

On appeal, petitioner argues that the circuit court erred in denying her motion to intervene and in denying her the opportunity to adopt her grandchildren. Petitioner argues that because she passed her home study, the children should be placed in her care pursuant to West Virginia Code § 49-4-114(a)(3), which provides, in part, that the DHHR shall offer placement to the grandparents "[i]f the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents." We find petitioner's argument unpersuasive. Petitioner misinterprets the grandparent preference under West Virginia Code § 49-4-114(a)(3). We have held "[t]he preference is just that-a preference. It is not absolute. As this Court has emphasized, the child's best interest remains paramount[.]" *In re K.E.*, -- W.Va. --, 809 S.E.2d 531, 536 (2018). In discussing West Virginia Code § 49-4-114(a)(3), we have also held that "[t]he statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." *Napoleon S. v. Walker*, 217 W.Va. 254, 261, 617 S.E.2d 801, 808 (2005).

Here, petitioner does not present any argument that placement with her is in the children's best interests. Petitioner argues that because she passed a home study, "she was by law, determined to be a 'suitable adoptive parent.'" However, although her home study was approved, it was approved "with concerns." Moreover, the approval of her home study did not automatically deem petitioner a suitable adoptive parent. In addition to the approval of a home study to show that grandparents would be suitable adoptive parents as required by West Virginia Code § 49-4-114(a)(3), "the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case." *Napoleon S.*, 217 W.Va. at 256, 617 S.E.2d at 803, Syl. Pt. 5, in part. After conducting the home study, the DHHR had several concerns with placing the children with petitioner. The concerns regarding petitioner's health, the cleanliness of her home, potential sleeping arrangements for the children, financial security, and her ability to help the children cope with recent trauma precluded the MDT and the DHHR from recommending that placement with her was in the children's best interests. Ultimately, the circuit court determined that placement with petitioner was not in the children's best interests based upon a totality of the circumstances.

Lastly, because the proceedings regarding D.D.'s father's parental rights are ongoing; this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-

3

604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 15, 2017, order denying petitioner's motion to intervene is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker