# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.U. and D.U.**

**No. 18-0422** (Logan County 17-JA-36-B and 17-JA-44-B)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.U., by counsel Mark Hobbs, appeals the Circuit Court of Logan County's April 6, 2018, order terminating his parental rights to M.U. and D.U.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Donna Pratt, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect if he was released from incarceration and in terminating his parental rights when he remained incarcerated due to his inability to post bail.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The petition indicated that the parents had an extensive history of Child Protective Services ("CPS") involvement with substantiated maltreatment findings. Specifically, the DHHR enumerated fifteen referrals it had received regarding petitioner over the course of nearly twenty years. Almost all of the referrals indicated that petitioner had an alcohol abuse problem which often resulted in domestic violence. Most recently, in May of 2017, the DHHR received a call from the Logan County Sheriff's Department, which reported that petitioner took then three-year-old M.U. to a bar where petitioner became intoxicated and attempted to walk home with the child. Law enforcement officers observed petitioner staggering alongside the road on a bridge with the child. Petitioner fell onto the child, pinning her between his body and the guardrail, nearly causing both of them to fall. Officers observed that the child was crying when she became

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

pinned. The child later informed the officers that she had been at a bar with petitioner while he was drinking. Petitioner was arrested and charged with child neglect resulting in risk of injury and public intoxication. Petitioner was unable to post bail and remained incarcerated during the entirety of the proceedings.

Thereafter, in July of 2017, the mother gave birth to D.U., and the DHHR filed an amended petition including that child in the proceedings. The circuit court held an adjudicatory hearing in January of 2018, wherein the DHHR presented the testimony of two witnesses, including the police officer who responded to the scene involving petitioner and M.U. in May of 2017. The officer testified that he observed petitioner to be in an intoxicated state when he fell onto the child and pinned her against the guardrail near the end of a bridge. A CPS worker testified that petitioner remained incarcerated throughout the proceedings and was unable to provide care for his children. Ultimately, the circuit court adjudicated petitioner as an abusing parent.

In March of 2018, the circuit court held a dispositional hearing. Petitioner moved the circuit court to continue the proceedings until he was released from incarceration and the circuit court denied said motion. After hearing evidence, the circuit court found that petitioner was arrested for child neglect creating risk of injury and was incarcerated, where he remained for the entirety of the proceedings. As a result, petitioner was unable to meaningfully participate in the proceedings and had no bond with the children because he had had no contact with M.U. after the initiation of the proceedings and had never met D.U., who was born after petitioner's incarceration. The circuit court concluded that, based upon those uncontested facts, coupled with petitioner's ongoing and indefinite incarceration, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests. It is from the April 6, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[2]Petitioner's parental rights to the children were terminated below. The mother is currently participating in an improvement period and the children have been returned to her physical custody. The permanency plan is reunification with the mother pending her successful completion of the improvement period. The concurrent permanency plan is adoption.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect upon his release from jail. Further, petitioner argues that the circuit court erred in terminating his parental rights when he remained incarcerated due to his inability to post bail. Based upon our review of the record, we disagree and find no error.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) provides that "'no reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing [parents] have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such a condition exists, according to West Virginia Code § 49-4-604(c)(3), when the

> abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner was adjudicated upon evidence that he was intoxicated while M.U. was in his care and fell onto her, pinning her against a guardrail and nearly causing her to fall over it while on a bridge. Petitioner was arrested as a result of his actions and remained incarcerated throughout the proceedings, rendering him unable to meaningfully participate in a family case plan aimed at correcting the conditions of abuse. Due to his incarceration, petitioner developed no bond with the children, particularly with D.U., who was born after petitioner's incarceration. Finally, the record establishes that petitioner had a lengthy history of CPS involvement due to his issues with alcohol abuse and domestic violence, but made no progress in addressing these issues over the years. Based on this evidence, we find that petitioner demonstrated no capacity to solve the conditions of abuse and/or neglect.

To the extent that petitioner argues that the issue of his non-participation and resulting inability to correct the conditions of abuse would have been solved simply by waiting until his release from incarceration, we note that Rule 5 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[u]nder no circumstances shall a child abuse and neglect [proceeding] be delayed pending the initiation, investigation, prosecution, or resolution of any

other proceeding, including, but not limited to, criminal proceedings." As such, the circuit court did not err in declining to consider petitioner's ability to correct the conditions of abuse in light of the fact that petitioner's release date was unknown and the parties consistently referred to his incarceration as "indefinite."

Because we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future, we find that the circuit court did not err in terminating his parental rights, despite the fact that he remained incarcerated and unable to post bail.[3] Regarding his incarceration, we note that "this Court has never held that incarceration can not be the sole basis for terminating parental rights." *Cecil T.*, 228 W.Va. at 96, 717 S.E.2d at 880. Further,

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it.

[3]As part of his argument, petitioner asserts that his due process rights were violated when the circuit court terminated his parental rights when he remained incarcerated because he was unable to post bail. Petitioner relies upon *In re S.K.*, No. 16-0863, 2017 WL 971918 (W.Va. Mar. 13, 2017) (memorandum decision), in which this Court affirmed the circuit court's decision declining to terminate the father's parental rights when he remained incarcerated at the dispositional stage of the proceedings. *In re S.K.* is distinguishable from petitioner's case. In that case, the father was granted an improvement period in which he undisputedly participated and made appropriate progress. During the improvement period, the father was incarcerated on unrelated charges and was unable to post bond, thus remaining in custody and unable to participate in services. At the dispositional hearing, the circuit court declined to terminate the father's parental rights, but rather imposed disposition under West Virginia Code § 49-4-604(b)(5), in part, based upon petitioner's presumption of innocence and his demonstrated compliance with his improvement period prior to his incarceration. This Court affirmed the decision, finding that the circuit court made appropriate findings that there was a reasonable likelihood that petitioner could correct the conditions of abuse in the near future and imposing a less-restrictive disposition as a result.

Petitioner, however, is unlike the father in *In re S.K.* Here, petitioner was incarcerated on allegations that gave rise to the filing of the petition and, after adjudication, the circuit court presumed his alleged actions were true for the purpose of the underlying proceedings. Petitioner's incarceration was based upon his abusive behavior towards M.U., while S.K.'s father's incarceration was entirely unrelated to the child abuse and neglect proceedings. Further, petitioner was never granted an improvement period and did not demonstrate that he was reasonably likely to participate in services were he to be released from incarceration in the near future. In contrast, S.K.'s father was granted an improvement period, complied with services, and made substantial progress throughout the proceedings, all of which led the circuit court to conclude that there was a reasonable likelihood that he could correct the conditions of abuse and neglect in the near future. As such, we find that *In re S.K.* is distinguishable from the case at bar and decline to further address petitioner's argument due to his failure to sufficiently provide any citation to authority on the same. *See* W.Va. R. App. Proc. 10(c)(7).

This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3.

Here, petitioner's incarceration was considered in light of the applicable factors set forth by *Cecil T.* Petitioner's abusive behavior related specifically to the offense for which he was incarcerated. Petitioner's incarceration remained indefinite as he had no knowledge of when or if he would be indicted, whether he would ultimately be convicted, or what his potential sentence would be if he were to be convicted. Evidence further established that petitioner had no bond with the children, who were both of tender years. At the time of the dispositional hearing, petitioner had not seen M.U. since his incarceration and never met D.U. While petitioner argues that he simply needed more time for his criminal proceedings to resolve, we note that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. . . ." *Cecil T.*, 228 W.Va. at 89, 717 S.E.2d at 873, Syl. Pt. 4, in part (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)). As such, the circuit court properly considered petitioner's incarceration, regardless of his ability to post bail, in making its decision to terminate petitioner's parental rights. As we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, we likewise find that the circuit court did not err in terminating his parental rights. Accordingly, petitioner is entitled to no relief.

Lastly, because the proceedings in circuit court regarding the mother are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 6, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment