**FILED**
**November 9, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In re B.C., S.C., & T.C.**

**Nos. 20-0979 & 20-0994** (Harrison County 19-JA-77-3, 19-JA-78-3, 19-JA-79-3)

**MEMORANDUM DECISION**

In these consolidated appeals, the West Virginia Department of Health and Human Resources ("DHHR") and the children's guardian ad litem ("guardian") appeal the November 30, 2020, order of the Circuit Court of Harrison County reunifying respondent father J.C. and respondent mother H.C. (collectively, "respondents") with the minor children, B.C., S.C., and T.C., and dismissing the abuse and neglect petition.[1] Respondents filed briefs in support of the circuit court's order. Counsel presented oral argument on October 6, 2021.[2]

Upon consideration of the standard of review, the briefs, the record presented, and oral argument, the Court finds no substantial question of law and no clear error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

**I. Factual and Procedural History**

This matter began in May 2019 when the DHHR received a report that then-eleven-month-old T.C. had sustained bruises to her head, face, neck, and upper arm. The child also had scratches on her chin and patches of petechiae on her neck, face, and arms. The DHHR initiated a home visit to investigate this report and confirmed the existence of T.C.'s injuries. Child Protective Services ("CPS") workers and law enforcement present during the investigation asked respondents who or what may have caused the injuries, and respondents opined that T.C.'s twin sister, S.C., may have caused the injuries as the twins shared a bed and often hit one another with toys or bottles. Respondent mother stated to an investigating officer that she may have picked the children up too roughly on occasion or put her hand over their mouths to calm them. Respondent father also stated he may have grabbed the children too roughly. At the conclusion of the investigation,

---

[1] These appeals were consolidated for purposes of argument and decision. Because the case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g.,* W. Va. R. App. P. 40(e); *In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] The DHHR is represented by Patrick Morrisey, Esq., Attorney General; and Chaelyn W. Casteel, Esq., Assistant Attorney General. The guardian ad litem is Dreama D. Sinkkanen, Esq. Respondent father is represented by Jenna L. Robey, Esq. Respondent mother is represented by Allison S. McClure, Esq.

the DHHR removed T.C., S.C., and B.C. from the home and filed an abuse and neglect petition setting out the aforementioned details and alleging that: (1) respondents physically abused T.C.; and (2) respondents failed to protect T.C. from abuse.[3]

Respondents waived the preliminary hearing and, at the adjudicatory hearing on July 18, 2019, offered to stipulate to the allegations in the petition. Respondent mother's proffered stipulation admitted to exercising inappropriate parental judgment in the handling of her children, and that such conduct constituted abuse. Respondent father's proffered stipulation admitted to failing to adequately supervise the children, and that such failure constituted neglect of the children. The DHHR and the guardian supported these stipulations. Ultimately, for reasons unclear to this Court, the circuit court rejected the stipulations but made them part of the record upon respondents' motion.

The court then held a two-day evidentiary hearing on July 22-23, 2019. The parties agreed to admit several exhibits into evidence, including T.C. and S.C.'s medical records, as well as color photographs of the injuries. The court heard testimony from a nurse practitioner who examined T.C. on the date of removal. She testified that there was bruising on T.C.'s cheek, petechiae under her eye, bruising on her shoulder and arm, a red mark and petechia on the back of her neck, and scratches on her face. The nurse practitioner opined that neither T.C. nor her twin sister could have caused the injuries but confirmed that the injuries could have been caused by someone grabbing the child too roughly. She also testified that petechiae may result from a child straining or bearing down from screaming for an extended period of time, and that the scratches could have been caused by a fingernail (including that of the child). In addition, the nurse practitioner observed that the twins suffered from developmental delays.

The court further heard testimony from respondents, who stated that they were unable to explain the cause of T.C.'s injuries but offered various scenarios that they believed may have caused them. The court heard testimony from two of the children's babysitters and a Birth to Three worker who described the twins' developmental delays and observed T.C.'s injuries. The children's step-grandmother, who is a nurse employed by the DHHR, testified that the twins were developmentally delayed. Finally, a Birth to Three developmental therapist testified regarding the extent of the developmental delays but noted that the children were improving since her first encounter with them.

At the close of this hearing, the circuit court found that T.C. "sustained traumatic injuries for which there has been no reasonable explanation offered indicating that the child has suffered non-accidental trauma. The perpetrator of the abuse has not been identified. The child was in the care, custody and control of the respondents at the time of the injury." Based upon this finding, the circuit court adjudged T.C. an abused child. The court also adjudged S.C. and B.C. as abused children, as they resided in the same home. Finally, the circuit court adjudged respondents as abusing parents. Thereafter, respondents moved for a post-adjudicatory improvement period.

The circuit court convened a hearing on respondents' motions on September 18, 2019. The DHHR and the guardian opposed the motions, arguing that respondents had failed to acknowledge the conditions of abuse or neglect, so an improvement period would be an exercise in futility.

---

[3] There were no specific allegations of abuse regarding S.C. and B.C.

After hearing testimony from numerous individuals, including respondents, service providers, and medical professionals, the circuit court made several findings of fact. Specifically, the court found that: (1) both respondents "admitted that the physical injuries to [T.C.] included bruising to her face, arm, back and scratches to her neck"; (2) respondent mother "admitted that she picked the minor child, [T.C.] up roughly and picked [the twins] up 'two at a time'"; and (3) respondent father "admitted that he did not take the appropriate responsibility for the care of his children and that he should have been more aware of their medical care and physical well-being[.]"

In addition, the circuit court observed that respondents had been proactively participating in adult life skills classes, parenting classes, random drug screens, and marriage counseling—all of which they sought out of their own accord. Further, respondents had not missed any of their appointments and were engaged in the curriculum for their classes. Additionally, respondents enrolled in a budgeting seminar in order to properly manage their household funds so that they could move into a larger home and reduce their working hours to provide more personalized care to the children. The court found that respondents actively and appropriately participated in weekly visits with the children, and that they brought activities and home-cooked meals for the children to these visits. Respondents also sought out marriage counseling, and respondent mother sought out individual counseling to manage stress and personal issues. Finally, the court noted that respondents had completed parental fitness evaluations and heard testimony that, based upon their psychological evaluations, they had the capacity to care for and protect their children, as well as change in order to provide for them.

Upon reviewing the evidence, the circuit court found that respondents "took responsibility for the injuries, which were not serious or life-threatening, sustained by the child, [T.C.], and for their role in not noticing or being proactive with the developmental delays and issues of the children[.]" The court then undertook an extensive analysis of this Court's precedents surrounding a parent's failure to acknowledge the conditions of abuse or neglect, and determined that all of those precedents were factually distinguishable from Respondents' case. The court opined that

> [t]here is probably not another case in recent memory where the [c]ourt has had parents that have done as much as [respondents] have done leading up to their requests for post-adjudicatory improvement periods. In fact, the [c]ourt cannot recall any respondents that have done as much after being granted post-adjudicatory improvement periods as [respondents] have done before even moving the [c]ourt for the improvement periods.

The court then granted respondents' motions for post-adjudicatory improvement periods.[4]

---

[4] We note that the DHHR and the guardian contend on appeal that the circuit court erred as matter of law in granting these improvement periods, yet neither of them sought a writ of prohibition from this Court to prevent the improvement periods from going forward at the time they were granted. Unquestionably, this Court has entertained writs of prohibition which seek to prevent circuit courts from enforcing orders granting improvement periods. *See e.g., State ex rel. S.W. v. Wilson*, 243 W. Va. 515, 845 S.E.2d 290 (2020) (granting a writ of prohibition to foreclose an improvement period that exceeded statutory time limits).

Respondents' post-adjudicatory improvement periods lasted for a total of nine months and went exceptionally well. By all accounts, they continued to actively engage in all of the services in which they had been participating prior to the grant of their improvement periods. They did not miss any visits with the children, nor did they miss drug screens or any of their adult life skills and parenting classes. Respondents' marriage counselor ended their sessions as she felt she could not ethically treat them as they did not have marriage problems, but respondent mother's individual sessions continued. Both respondents completed anger management counseling and a domestic batterer's intervention course. Of particular note, the circuit court highlighted a letter from the psychologist who administered the anger management course wherein she stated "that she had never worked with a family more deserving of being reunified."

The circuit court convened the dispositional hearing on August 21, 2020, and once again heard testimony from multiple individuals, including respondents, their counselor Brenda Hinkle, CPS workers, and the adult life skills and parenting service provider. After the close of evidence, the circuit court found, once again, that respondents "took responsibility for [T.C.]'s minor, non-life-threatening injuries and for their failure to realize or be proactive in addressing [the twins'] developmental delays." The circuit court took care to note that neither the DHHR nor the guardian challenged this finding when it was included in the order granting respondents' motions for post-adjudicatory improvement periods. Further, the court found that there was no dispute that respondents "fully participated in and completed the terms and conditions of their post-adjudicatory improvement periods[.]" The court then reiterated that respondent mother "acknowledged that [T.C.] was injured but that she still did not know how it happened" and that respondent father "acknowledged that he was not very involved with doctor visits and the growth of the children prior to the instigation of this case." Finally, the court found that respondents had corrected the issues that led to the filing of the abuse and neglect petition and ordered that they be reunified with the children and that the petition be dismissed.[5]

The DHHR and guardian now appeal that order.[6]

_____

[5] The children were returned to respondents' home on December 11, 2020, and have remained there through the pendency of this appeal. The guardian moved this Court for a stay of this reunification order while this appeal was pending, but we denied that motion.

[6] We note that the guardian stated at oral argument that she had not seen the children since they were reunified with respondents in December 2020. We can also determine from the record that she had not met with them at all prior to the adjudicatory hearings in July 2019—two months into the proceedings. While we are cognizant that the twins were too young to communicate, B.C. was seven years old at the time this action began and may have benefited from interaction with the guardian had she met with him. This elicits concern, as we have explicitly held that "[e]ach child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, [W. Va. Code § 49-4-601(f)] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings." Syl. Pt. 5, in part, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *see also State v. Michael M.*, 202 W. Va. 350, 355 n.11, 504 S.E.2d 177, 182 n.11 (1998) ("[G]uardians *ad litem* have a duty to fully represent the interests of their child wards at all stages of the abuse and/or neglect proceedings, both in the circuit court and on appeal."). While we do not explicitly address this guardian's conduct, we question whether a guardian can effectively and competently represent their child wards when they do not maintain contact with

## II. Standard of Review

When reviewing a circuit court's dispositional order in an abuse and neglect action, we review questions of law de novo, while findings of fact and conclusions of law regarding whether a child has been abused or neglected are examined for clear error:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we now proceed to the parties' arguments.

## III. Analysis

Though the DHHR and the guardian appeal separately, they raise nearly identical arguments, so we will address them together. They argue the circuit court erred in: (1) granting respondents' motions for post-adjudicatory improvement periods; and (2) reunifying respondents with the children and dismissing the petition. Both of these arguments are predicated on the notion that respondents failed to acknowledge that T.C. had been abused or to identify her abuser. Because we find that the circuit court did not err in concluding that respondents had made the requisite acknowledgments, we reject both of these arguments.

### A. Post-Adjudicatory Improvement Periods

The DHHR and the guardian first assert that the circuit court erred in granting respondents' motions for post-adjudicatory improvement periods. In support, they note that this Court has previously held that

> in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation

---

them throughout the proceedings, if for no other reason than to ascertain whether they are safe and well. As such, we take this opportunity to remind members of the bar who act as guardians ad litem to be mindful of their legal and ethical obligations in representing their child wards.

pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense. *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004) (quoting *W. Va. Dept. of Health and Human Res. v. Doris S.*, 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996)).

We have further explained that "an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged." *In re Emily*, 208 W.Va. 325, 334, 540 S.E.2d 542, 551. Under this precedent, in order to remedy the abuse and/or neglect problem, the parent must recognize and acknowledge that his or her conduct constituted abuse.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013).

The circuit court granted respondents' motions for post-adjudicatory improvement periods upon finding that they "took responsibility for the injuries, which were not serious or life-threatening, sustained by the child, [T.C.], and for their role in not noticing or being proactive with the developmental delays and issues of the children[.]" In addition, the circuit court made multiple findings that; (1) both respondents admitted to the existence of T.C.'s injuries as described; (2) respondent mother acknowledged her conduct which may have resulted in injury to the child, namely that she grabbed T.C. too roughly and that she improperly picked the twins up "two at a time"; and (3) respondent father acknowledged his failure to be attentive to the children or to be cognizant of their medical care and well-being. The record is replete with evidence to support these findings, including the statements respondents made to CPS workers and law enforcement regarding improper handling of the children (as set out in the original petition), their proffered stipulations admitting that their conduct constituted abuse and neglect, and their explicit testimony at the hearing on their motions for post-adjudicatory improvement periods again admitting to improper handling and inattentiveness. Further, testimony was offered by the psychological evaluator that the parents had made these same admissions to him during their evaluations. Moreover, we take care to note that the DHHR and the guardian were content to accept these very admissions in respondents' proffered stipulations, but now find them insufficient.

On the record before us, we cannot conclude that the circuit court clearly erred in finding that respondents acknowledged "the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect[.]" *Id.* Rather, it appears that though respondents could not identify the precise cause of T.C.'s injuries, they each accepted responsibility for having contributed to those injuries, either directly or indirectly. More to the point, they made these acknowledgments *multiple times* throughout the proceedings. Respondent mother did so by acknowledging her improper handling of the children, and respondent father did so by acknowledging his failure to be attentive to the children and their well-being. On the facts of this case, we conclude this was sufficient for the circuit court to find that they had acknowledged the conditions of abuse and/or neglect that led to the filing of the petition. As that finding was amply supported by the record, we are not permitted—nor are we inclined—to overturn it. Therefore, we

find the circuit court did not err in granting respondents' motions for post-adjudicatory improvement periods.

**B. Reunification and Dismissal of the Petition**

The DHHR and the guardian next argue that the circuit court erred in reunifying respondents with the children and in dismissing the abuse and neglect petition. They contend that respondents' failure to acknowledge that T.C. was abused necessarily meant there was no reasonable likelihood the conditions of neglect or abuse could be substantially corrected, so termination was required under West Virginia Code § 49-4-604(c)(6).

In support of this argument, the DHHR and the guardian note that West Virginia Code § 49-4-604(d) defines "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" to mean that "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id*. The holdings set out in the previous section apply equally to termination of parental rights, insofar as a respondent parent's failure to acknowledge the conditions that led to the filing of the petition renders those conditions untreatable. *See Timber M.*, 231 W. Va. at 55, 743 S.E.2d at 363 ("In order to remedy the abuse and/or neglect problem, the problem must first be acknowledged . . . Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.").

Just as it did in granting respondents' motions for post-adjudicatory improvement periods, the circuit court unequivocally found in its dispositional order reunifying the family and dismissing the petition that respondents "took responsibility for [T.C.]'s minor, non-life-threatening injuries and for their failure to realize or be proactive in addressing [the twins'] developmental delays." That finding, as noted in the previous section, is amply supported by the record in this case and we will not disturb it on appeal.

Moreover, the circuit court made extensive findings regarding respondents' full compliance with the terms of their improvement periods. In fact, the record is clear that their participation was exemplary in that they actively participated in services and visits with the children, passed every drug screen, participated in marriage and individual counseling, completed a domestic violence intervention course and an anger management course, and enrolled in a personal budgeting program. For that reason, the circuit court was also justified in concluding that respondents had corrected the conditions that led to the filing of the petition, as they had demonstrated an ability to correct the problems on their own and with help. As such, the circuit court did not err in reunifying respondents with their children or in dismissing the petition.

**IV. Conclusion**

For the foregoing reasons, we affirm the Circuit Court of Harrison County's November 30, 2020, order reunifying respondents with the minor children B.C., S.C., and T.C., and dismissing the abuse and neglect petition.

Affirmed.

**ISSUED**: November 9, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton